UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              CRIMINAL NO. 19-20388

v.                                             Hon. Nancy G. Edmunds

ZACHARY WORLEY,

        Defendant.

        _____/

**Government's Sentencing Memorandum**

Worley took advantage of a fifteen-year old girl's vulnerabilities, including her young age, and enticed her into a twisted sexual relationship. Worley used illegal narcotics to further this relationship. Because of this conduct, Worley faces a mandatory minimum of 120 months imprisonment and his guidelines are 360 months to life. However, the Government recommends a downward variance and a sentence of **300 months** followed by a lifetime of supervised release.

**I. FACTS AND PROCEDURAL HISTORY**

In or around early 2018, Worley, then 25-years old, established an online relationship with a fifteen-year old girl (MV-1). Worley communicated with MV-1 through websites, phone apps, and text messages on a regular basis through February 2019. Worley ultimately exploited MV-1 by producing and possessing

child pornography of her, providing her with illegal narcotics, and engaging in sexual activity with her.

Worley first found MV-1 through the website "Meet-Me," an online chat application. MV-1 represented in her online profile that she was 19 years old, but in reality MV-1 was 15 years old. MV-1 and Worley exchanged messages and pictures both online and through Snapchat, a picture/chat phone application. The messages exchanged between Worley and MV-1 contained sexually explicit photos and videos, including at least one video of MV-1 masturbating. Worley took screenshots of this video, thereby producing child pornography. Worley and MV-1 also exchanged a number of text messages.

In the beginning of February 2019, Worley began making plans to move from Texas to Michigan to be with MV-1. By then, he was referring to MV-1 as his "soon to be [girlfriend] and wife" in text message conversations. Worley made plans with a friend of his (CW-1) for him and MV-1 to stay at CW-1's home in Romulus, Michigan. On February 4-6, Worley travelled by bus from his home in Texas to Kalamazoo, Michigan. CW-1 picked up MV-1 from her parents' home in South Lyon, Michigan before picking up Worley from the bus station in Kalamazoo. CW-1 later brought MV-1 to back to her parents' home.

On February 13, 2019, CW-1 returned to MV-1's parents' house to pick up MV-1. CW-1 brought MV-1 to his home in Romulus to be with Worley. Worley

and MV-1 slept in CW-1's dining room, which Worley had converted into a bedroom. MV-1 and Worley slept in the same bed. After meeting and spending time with MV-1 in person, CW-1 became concerned about how young MV-1 appeared to be.  CW-1 shared these concerns with Worley.  Worley disregarded these concerns and made no effort to verify MV-1's real age.  Instead, Worley continued to take advantage of MV-1.

Worley used illegal narcotics to facilitate his exploitation of MV-1.  Worley brought lysergic acid diethylamide (LSD), a schedule I narcotic, with him from Texas to Michigan.  Worley possessed LSD in the form of tablets, shaped like cartoon characters.  While staying at CW-1's home, Worley provided MV-1 with LSD in the form of a Sponge Bob tablet.  Worley gave MV-1 this tablet because she liked the cartoon Sponge Bob.  After administering LSD to MV-1, Worley engaged in sexual intercourse with MV-1 multiple times on February 14, 2019.

Worley's use of LSD with MV-1 caused an argument between Worley and CW-1.  CW-1 made it clear to Worley that he would not allow drug use in his home.  CW-1 again expressed concern to Worley about how young MV-1 appeared to be.  Worley then decided to leave Michigan and to take MV-1 with him.  CW-1 attempted to return MV-1 to her father's home in South Lyon, but MV-1 refused to go with CW-1.  CW-1 then drove to MV-1's home in South Lyon to alert her father about what was happening with Worley and MV-1.  MV-1's

father told CW-1 that MV-1 was only 15 years old.  CW-1 invited MV-1's father back to his home in Romulus to retrieve MV-1.  When CW-1 and MV-1's father got to the Romulus home, Worley and MV-1 were already gone.

Worley took MV-1 to the Greyhound bus station in Detroit, Michigan with the intention of taking her to Texas.  On the way to the bus station, Worley instructed MV-1 to get rid of her cell phone to avoid her father locating them.  MV-1 hid her cell phone in a stack of tires in an auto store.  Once at the bus station, Worley waited for his brother to purchase two bus tickets to Texas.

After confirming his concerns about MV-1's real age, CW-1 reached out to Worley and told him that MV-1 was only 15 years old.  CW-1 and Worley exchanged several messages through Snapchat.  Worley sent CW-1 a message telling CW-1 that he was right, that Worley was sorry and that he was sorry for doubting him.  Worley then further manipulated MV-1 by forcing her to apologize to him while recording her through Snapchat, broadcasting her apology to his "followers."  Worley later admitted to taking the video because he thought it would "help [his] case."

CW-1 and MV-1's father contacted the police, reporting that Worley had taken MV-1 to the bus station, intending to leave the state with her.  Michigan State Police officers responded to the Greyhound bus station in Detroit where they found Worley with MV-1.  Officers then placed Worley under arrest.

Worley subsequently gave a statement to officers regarding his contact and relationship with MV-1. Worley made a number of admissions, including the following:

- He admitted he first met MV-1 on "Meet-Me."
- He said he came to Michigan on February 6 to stay with CW-1 and that they picked up MV-1.
- He said CW-1 told him that MV-1 was underage and not 19.
- He said that he saw MV-1 completing homework assignments on her laptop.
- He said that MV-1 told him that she was a virgin.
- He said he had sex with MV-1 a few times on Valentine's Day.
- He stated that he had used LSD with MV-1 and given her LSD.
- He admitted that he had exchanged explicit images and videos with MV-1 and that these explicit images and videos included video of her masturbating.
- Worley created a video of MV-1 saying that Worley did not know her age and saying that she was sorry for lying to Worley.

Officers took Worley's cell phone and performed a forensic extraction of its contents pursuant to a search warrant.

## II.   FORENSIC RESULTS

The forensic examination of Worley's phone revealed more than a dozen images of MV-1. These images included screenshots of a video taken on November 21, 2018 of MV-1 wearing only black underwear, with the focal point being her groin area. In this series of screenshots, MV-1 appears to be using a sex toy on her genital area. These images meet the Federal definition of child pornography.

The forensic examination also revealed several text messages with at least one other minor female. In these messages, the minor female tells Worley that she is "getting old… halfway to thirty." Worley keeps in contact with this minor female through February 2019.

The forensic examination of Worley's phone also revealed several chats and text messages regarding Worley's use and sale of illegal narcotics. There are several photographs and videos depicting Worley possessing and using what appears to be illegal narcotics, specifically LSD. There are also several chats and photographs that depict Worley providing LSD to MV-1 and others.

## III.   ADVISORY SENTENCING GUIDELINES

The Guidelines in this case are not in dispute. The Government, counsel for the defense, and Probation agree that the Guidelines are 360 months to life, based on a total offense level of 42 and a criminal history category of I.

## IV.  SENTENCING FACTORS, TITLE 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."  Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.  The most relevant factors are evaluated below, beginning with the sentencing guidelines.

### A.    The Advisory Guideline Range

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). Despite their being advisory, rather than mandatory, the Guidelines remain an important factor in fashioning a just sentence. As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

In *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008), the Court in analyzing the holding in *Rita*, recognized that the guidelines represent the Sentencing Commission's attempt to reconcile the factors under § 3553(a), that these factors seek to balance Congress' competing interests in consistency and that a confluence between the national views of the sentencing commission and the independent views of a sentencing judge results in a "double determination" which significantly increases the likelihood that a sentence is reasonable.

In *United States v. Gall*, 128 S.Ct. 586, 601 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 128 S.Ct. at 596.

### B. Nature and Circumstances of the Offense

The nature and circumstances of the offense warrant the Government's requested 25-year sentence. Over the course of several months, Worley communicated with MV-1 for the purpose of establishing a relationship with her. While Worley may not have had physical contact with MV-1 prior to February of 2019, he had been exchanging images with her for several months before ultimately having sex with her. Many of these images were sexually explicit and met the Federal definition of child pornography. Worley had ample opportunity to view

MV-1 and observe what was readily apparent to law enforcement and CW-1—that MV-1 was a minor.

Children, unlike adults, are unable to consent to sexual activity because they simply cannot comprehend the consequences of their actions in the same way that an adult can. Simply put, Worley took advantage of a child. And the way in which he did so was by manipulation and through the use of illegal narcotics.

The seriousness of the offense is also reflected in the types of sentences available in these types of cases. Congress has set the mandatory minimum punishment for this type of crime at 10 years. That means that even attempting to entice a minor to commit a crime warrants a 10-year custodial sentence. Where a defendant actually succeeds in exploiting and having sex with a minor—as is the case here—a 25-year custodial sentence is warranted.

### C. History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1).

Nothing about Worley's history and characteristics suggests that a sentence of 25 years' imprisonment is unwarranted. Worley has a lengthy out-of-state criminal history involving convictions for illegal narcotics and assaultive conduct. PSR ¶ 96. And, his actions in this case demonstrate a repeated disregard for the law and a callousness to the fragile wellbeing of children.

Worley is a 25 year old man of ordinary intelligence and physical health. He has reported childhood trauma in the death of his mother and physical abuse by his

father. PSR ¶ 94. The Government has no reason to doubt that this is true. Yet, it doesn't mitigate what Worley did to manipulate and exploit MV-1 in this case.

Worley's history and characteristics show that he has one of the major risk factors for future recidivism associated with antisocial behavior, a history of substance abuse. PSR ¶ 61-65. In fact, Worley has been identified as having a severe substance abuse disorder. PSR ¶ 67. Worley is a user of cocaine, LSD, marijuana, ecstasy, and ketamine. PSR ¶ 61-65.

Unlike many child exploitation offenders, he has a criminal history, with a convictions for possessing marijuana, burglary, assault, possession of dangerous drugs, and terroristic threat of family or household. PSR ¶ 96. Moreover, his conduct here took place over the span of a year. This was not an impulsive decision that Worley immediately regretted and tried to make amends for. It was a decision he made day in and day out over and over again.

### D. The Sentence Imposed Must Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment, 18 U.S.C. §3553(a)(2)(A)

Offenses like enticement of a minor and child pornography offenses that result in perpetual harm to a child and validate and normalize the sexual exploitation of children are extremely serious. The sentence imposed should provide just punishment.

As a society, we have set certain standards of conduct by which we must conduct ourselves, particularly when it comes to protecting our children. Worley sexually exploited a child when he produced child pornography by capturing screenshots of her in her underwear. And, months later, furthered this exploitation when he sexually assaulted her multiple times. Worley's conviction involves harms to MV-1, which will have a lasting, indescribable, impact on the life of MV-1 and her family. A sentence of 25 years' imprisonment would reflect the seriousness of this offense, promote respect for the law, and provide just punishment.

### E. The Sentence Imposed Must Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant, 18 U.S.C. §3553(a)(2)(B) and (C)

Deterrence is a key component in discouraging future criminal behavior and protecting the public. This conviction will be the fifth conviction for which Worley will have been sentenced to a custodial sentence. It is clear that the lesson about deterrence did not take the first four times for Worley. He has not seized the opportunity he has been given time and time again. The public deserves to be protected from Worley's steadily-escalating criminal behavior. A sentence of 25 years' imprisonment would serve as an adequate deterrent.

F.  **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct 18 U.S.C. §3553(A)(6).**

A 300 month sentence in this case fits comfortably within the range of sentences that similarly situated defendants receive.

G.  **Restitution Stipulation**

The Government and counsel for the defense stipulate to restitution in the amount of $25,000 to MV-1.

V.  **CONCLUSION**

The Government requests that the Court grant its motion for downward variance and impose a sentence of **25 years' imprisonment** followed by a lifetime of supervised release.

                                            Respectfully submitted,

                                            Matthew Schneider
                                            United States Attorney

                                            *s/Barbara Lanning*
                                            Barbara Lanning
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI  48226
                                            Phone:  (313) 226-9103
                                            E-Mail: barbara.lanning@usdoj.gov

Dated:  November 27, 2019

## Certificate of Service

I hereby certify that on November 27, 2019, I electronically filed the Government's Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan.  I sent the memorandum and attached exhibits electronically to defense attorney Stacey Studnicki.

Stacey Studnicki<br>
stacey_studnicki@fd.org<br>
*Attorney for Defendant*

*s/Barbara Lanning*
Barbara Lanning
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9103
E-Mail: barbara.lanning@usdoj.gov